IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ANTHONY S. KIDD,**

   **Plaintiff,**

   v.               **CASE NO. 22-3123-SAC**

**JEREMY BAKER, et al.,**

   **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff brings this pro se action under 42 U.S.C. § 1983. Although Plaintiff is currently incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas, the claims giving rise to his Complaint occurred during his detention at the Larned Correctional Mental Health Facility in Larned, Kansas ("LCMHF"). This matter is before the Court for screening Plaintiff's Complaint under 28 U.S.C. § 1915A.

**I. Nature of the Matter Before the Court**

Plaintiff alleges that on December 28, 2021, while housed at LCMHF, corrections officers choked him and used excessive force while he was handcuffed and restrained. Plaintiff describes the incident as follows. Plaintiff asked CO Vsetecka to open his door so he could clean his cell and take a shower before yard time. Vsetecka initially complied but then closed the door without explanation until yard was called. At that time, Plaintiff and Vsetecka had a verbal confrontation because Plaintiff had wanted to shower and clean his cell without missing yard. Plaintiff claims Vsetecka was trying to provoke him. Vsetecka pulled out a can of mace and called the response unit. Plaintiff went to his cell and got the items he needed for a shower. Shortly, COs Baker, Jones, and Falck responded to the code. Plaintiff and Baker had a

1

conversation, and Plaintiff believed the matter was resolved. Then, Vsetecka again closed Plaintiff's door. Baker, Jones, and Falck returned to Plaintiff's cell and gave him an order to cuff up. Plaintiff was holding his shower supplies and did not immediately comply. He was attempting to have a discussion with CO Baker when Baker reached out and grabbed his arm. Plaintiff instinctively pulled his arm back. Then, an unidentified officer (referred to as CO Doe) punched Plaintiff in the side of the head, and Plaintiff began to fight back. Additional officers appeared, including CO Simmons. They managed to get Plaintiff's ankles shackled. Plaintiff was lifted off his feet by Baker, Jones, and Falck and slammed to the ground, causing the breath to be knocked out of him, his back to be twisted, and his right elbow to forcefully hit the ground. The officers were then able to get the handcuffs on Plaintiff.

At that point, while Plaintiff's hands and feet were shackled, CO Baker put Plaintiff in a headlock and began to beat him. After hitting him for a while, Baker began choking Plaintiff. In fear for his life, Plaintiff bit Baker on the arm. Baker stopped choking him, and Plaintiff was being lifted up and put into a wheelchair when Baker grabbed Plaintiff with both hands around his throat and began choking him again. None of the other officers present, including Vsetecka, Simmons, Jones, or Falck, intervened in any way to stop the use of force.

Plaintiff suffered a deep laceration in his right ankle resulting in nerve damage, a cyst on his right elbow, and a mid-back injury that is worsening.

Plaintiff claims excessive force. Plaintiff names as Defendants: Corrections Officers Jeremy Baker, Tyler Jones, Michael Falck, Jason Vsetecka, (FNU) Simmons, and John Doe. He seeks a declaratory judgment, as well as compensatory and punitive damages.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a

3

claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

### III.  Discussion

A prison guard's use of force against an inmate is "cruel and unusual" only if it involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

"[A]n excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Giron v. Corr. Corp. of America*, 191 F.3d 1281, 1289 (10th Cir. 1999). "An official has a culpable state of mind if he uses force 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Redmond v. Crowther*, 882 F.3d 927, 936–37 (10th Cir. 2018) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

Based on Plaintiff's allegations, it appears that the initial use of force may have been justified. Prisoners cannot pick and choose which orders they obey and which they ignore. However, Plaintiff claims he was fully shackled and had stopped resisting when Baker choked him the second time. *See Lowe v. Sockey*, 36 F. App'x 353, 358-59 (10th Cir. 2002) (allegation that guards initiated physical contact, beat and injured the plaintiff, and continued to use force following the plaintiff's confinement in shackles, if proven, would "certainly constitute a violation of the Eighth Amendment").

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of the LCMHF. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate officials of the LCMHF to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

**IV. Motion for Appointment of Counsel**

Plaintiff has filed a Motion for Appointment of Counsel (Doc. 3), stating that he is unable

to afford counsel, is in segregation with a limited ability to access the law library, has no knowledge of the law, has contacted multiple attorneys without success, and that the issues are complex. The Court has considered Plaintiff's motion for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not overly complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. The Court denies the motion without prejudice to refiling the motion if Plaintiff's Complaint survives screening.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion for Appointment of Counsel (Doc. 3) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that**:**

(1)     The Court will enter a separate e-service order directing the Clerk of Court to serve Defendants.

(2)     The Kansas Department of Corrections ("KDOC") shall submit the *Martinez* Report within **sixty (60) days** following the electronic filing of the Waiver of Service Executed. Upon the filing of that Report, the Court will screen Plaintiff's Complaint.  If the Complaint survives screening, the Court will enter a separate order setting an answer deadline.  Therefore, any answer deadline provided in the waiver of service is not controlling.

(3)     Officials responsible for the operation of the LCMHF are directed to undertake a review of the subject matter of the Complaint:

   a.    To ascertain the facts and circumstances;

   b.    To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

   c.    To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(4)     Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff.  The KDOC must seek leave of the Court if it wishes to file certain exhibits or portions of the report under seal or without service on Plaintiff. Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(5)     Authorization is granted to the officials of the LCMHF to interview all witnesses having knowledge of the facts, including Plaintiff.

(6)     No motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7)     Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Complaint.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, to Defendant, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED**.

**Dated August 3, 2022, in Topeka, Kansas.**


**s/ Sam A. Crow**
**Sam A. Crow**
**U.S. Senior District Judge**