Jon D. Graves, Legal Counsel, SC #10554
Hutchinson Correctional Facility
P.O. Box 1568
Hutchinson, KS 67504-1568
Telephone: (620) 625-7253
Jon.Graves@ks.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANTHONY KIDD ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-3123-SAC |
| ) | |
| JEREMY BAKER, TYLER JONES ) | |
| MICHAEL FALK, JASON VSETECKA ) | |
| F.N.U. SIMMONS, JOHN DOE ) | |
| Defendants. ) | |
| _____) | |

### REPORT IN "MARTINEZ v. AARON" INVESTIGATION

### CIVIL RIGHTS COMPLAINT

On June 17, 2022, plaintiff Anthony Kidd filed a civil rights action pursuant to 42 USC §1983 in the United States District Court for the District of Kansas. (Doc. 1, p.1) At all relevant times plaintiff was an inmate incarcerated in the custody of the Secretary of Corrections of the State of Kansas and was housed at all relevant times at the Larned Correctional Mental Health Facility.

On August 3, 2022, the Court issued an order directing the preparation of a Martinez report. (Doc. 6)

1

## SUMMARY OF ALLEGATIONS IN PLAINTIFF'S PETITION

Plaintiff was an inmate housed at the Larned Correctional Mental Health Facility (LCMHF) at the time his cause of action arose on December 28, 2021. (Doc. 1 p.8)

On December 28, 2021, plaintiff was in his cell and asked defendant Vsetecka to open his door so he could clean his cell and shower before exercise yard. Vsetecka initially opened the door and then shut it for an unknown reason. When yard was called Vsetecka opened plaintiff's door again so plaintiff could go to yard and the two had a verbal confrontation. Vsetecka took out his mace and called for a response team. Plaintiff returned to his cell to get his shower supplies. Defendants Baker, Jones and Falck responded to Vsetecka's call. Plaintiff explained to defendant Baker about plaintiff wanting to shower before yard and complaining because Vsetecka shut his cell door. Defendants Baker, Jones and Falck walked away and Vsetecka closed plaintiff's cell door. (Doc. 1, pp. 8-9)

Defendants Baker, Jones and Falck returned to plaintiff's cell and ordered plaintiff to "cuff up". Plaintiff and defendant Baker conversed. Defendant Baker reached for plaintiff's arm, plaintiff jerked away and an officer punched him on the side of his head. Plaintiff began to fight. Simmons showed up on scene. The officers were able to shackle plaintiff's feet. Sometime during the scuffle plaintiff was lifted three feet up and slammed to the floor. Plaintiff was raised to his feet to be put in a wheelchair and defendant Baker grabbed plaintiff by the throat with both hands and choked him, even though plaintiff was not resisting. Plaintiff was choked on multiple occasions by defendant Baker. None of the officers present intervened. (Doc. 1, pp. 10-12)

Plaintiff states the use of force by defendant Baker violated Department of Corrections Internal Management Policies and Procedures by bear hugging and choking plaintiff.(Doc. 1, p.12)

Plaintiff states the entire incident was captured on the living unit camera and also on a handheld camera. (Doc. 1, p.12)

Defendant Baker was disciplined for his actions and was demoted as a result. (Doc 1, p. 12)

IMPP 12-111 governs use of force against inmates. (Doc. 1, p. 12)

Plaintiff suffered a deep laceration on his right ankle due to the leg restraints applied to him and now has nerve damage too. Plaintiff also has a large cyst on his right elbow which is growing and a mid-back injury that is worsening. He is receiving treatment from the healthcare provider for these injuries.

In Count I of Plaintiff's complaint, he claims he was subjected to cruel and unusual punishment in violation of his 8th Amendment rights were violated because defendant John Doe, without need or provocation, maliciously and sadistically struck plaintiff in the head. (Doc. 1 pp.14-15) In a review of plaintiff's complaint, counsel preparing the report can find no mention of any behavior by John Doe (Doe), much less any allegation of him punching plaintiff.

In Count II of his petition Plaintiff states that defendants Baker, Jones and Falck slammed him to the floor in the course of a use of force in a manner that was cruel and unusual and violated his rights under the 8th Amendment. (Doc. 1, pp. 14- 15)

In Count III of his petition plaintiff states that defendant Baker choked him and defendants Jones, Falck, Vsetecka and Simmons failed to intervene in Baker's action, all in violation of plaintiff's right against being subjected to cruel and unusual punishment as guaranteed under the 8th Amendment to the U.S. Constitution. (Doc. 1, pp. 14-15)

Plaintiff states he exhausted his administrative remedies (Doc 1, p.5, 14)

Plaintiff attaches a letter dated February 11, 2022, asking for a review of the use of force December 28, 2021, which was responded to by the Secretary of Corrections designee on February 23, 2022, telling him that all uses of force are reviewed and that he would not be advised of the result of that review. (Doc. 1-2, pp. 1-3)

Plaintiff also sent a letter to the Secretary of Corrections February 17, 2022, asking for his classification as OSR (Other Security Risk security classification) to be reconsidered. The Secretary's designee responded February 28, 2022, that the issue has already been responded to. (Doc 1-2, pp.4-6)

Plaintiff sent a grievance to his current unit team at the El Dorado Correctional Facility with a date that might be May 13, 2022. In this grievance he recited some of the facts of the events of December 28, 2021, and asked to be taken off OSR status.  He also asked that the officers involved in the use of force on December 28, 2021, be reprimanded.  It was responded to by Unit team on May 17, 2022, advising plaintiff that K.A.R. 44-15-101a(d)(2) indicated that the grievance procedure could not be used to challenge his security classification.  Plaintiff appealed that to the Warden the same day.  The warden responded similarly on June 3, 2022.  Instead of waiting for a response, On May 28, 2022,   plaintiff sent a letter he characterized as an unanswered grievance. June 9, 2022, the Secretary's designee responded to that letter, again

4

affirming that his request to be relieved of his OSR status was not the proper subject of the grievance procedure. (Doc. 1-2, pp.7-21)

Plaintiff's request for relief seeks a declaratory judgment that defendant Doe violated his 8th Amendment rights by punching him in the head, that defendants Baker, Jones and Falck violated his 8th Amendment rights by slamming him to the ground, that Defendant Baker violated his 8th Amendment rights by choking him and defendants Jones, Falck and Vsetecka violated his 8th Amendment rights by failing to intervene in Baker's act. (Doc 1, p. 15)

Plaintiff requests compensatory damages of $275,000 jointly and severely against defendants Baker, Jones, Falck, Vsetecka and Simmons for physical and emotional injuries.

Plaintiff requests Punitive damages of $100,000 against defendant Baker and $25,000 each against defendants Jones, Falck, Vsetecka and Simmons. (Doc. 1, pp. 15-16)

Plaintiff sues all defendants in their individual capacities and alleges they were all acting under color of state law. (Doc 1 pp. 1-2, 7-8)

## UNCONTROVERTED STATEMENT OF FACTS

### I.     PLAINTIFF POST FILING INFORMATION

Plaintiff, Anthony Kidd #93399, is an inmate legally incarcerated in the custody of the Secretary of Corrections, State of Kansas under the conviction name of Anthony S. Kidd. Plaintiff has four active felony convictions.  Plaintiff is currently serving sentences for the convictions of first degree murder, aggravated assault, flee or attempt to elude law enforcement officers, aggravated battery and criminal discharge of a firearm, all committed on May 7, 2007. Plaintiff had been housed at LCMHF since September 29, 2020, until he moved to the El Dorado

Correctional Facility on February 22, 2022. (See Kasper Sheet Exhibit 1)

Plaintiff was sent a letter on August 31, 2022, asking him if he had anything to add to this report. Plaintiff has not responded. (Exhibit 2)

Plaintiff responded with undated correspondence mailed September 12, 2022, which asked counsel to add officer Simmons' first name, to add John Doe's name and also included some written discovery documents for defendants. (Exhibit 3)

Counsel responded with a letter advising plaintiff that the Court would make a decision about adding information to the petition and that discovery is premature. (Exhibit 4)

## II.     USE OF FORCE AGAINST PLAINTIFF ON DECEMBER 28, 2021

Plaintiff complains that the use of force against him was not necessary and more force than was reasonable and necessary was used, resulting in him being subjected to cruel and unusual punishment.

This entire event was captured on the cell house security camera, but a hand held video camera was not used because the use of force was not a planned use of force which would involve a team of staff with protective equipment and would require the event to be recorded on a handheld camera also. (Exhibit 15)

At 9:18 a.m. on December 28, 2021, defendant Vsetecka was opening cells so inmates could go to exercise yard. Plaintiff told defendant Vsetecka to open his cell door the next time plaintiff told him to do so and made that statement in a threatening manner. Vsetecka summoned the response team of defendants Baker and Jones. Plaintiff was returned to his cell. Vsetecka issued a disciplinary report to plaintiff for threatening or intimidating to which plaintiff pled no contest. (Exhibits 5, 6, 8, 9 & 12)

Captain Pflughoeft then authorized moving plaintiff to a restrictive housing unit (RHU) cell pending the outcome of his disciplinary hearing. (Exhibit 5)

At 9:35 a.m. on December 28, 2021, defendants Vsetecka, Baker, Jones and Falck went to plaintiff's cell to put restraints on plaintiff and escort him to pre-detention housing. Baker gave plaintiff three directives to put his hands behind his back so he could be restrained. Plaintiff did not comply and violently resisted, beginning with throwing a punch striking Baker in the face. Plaintiff then began trying to punch everyone and continued fighting to avoid being handcuffed. (Exhibits 5, 6, 8, 9, 14 & 15)

A response was called on the radio and more staff arrived including defendant Simmons and officer Danny Bentley. (Exhibits 7, 11 & 14)

The scramble to control plaintiff continued. During the course of the disturbance Baker, in trying to get plaintiff to put his arms behind his back, threw multiple punches toward plaintiff's bicep, an approved technique. While Baker controlled plaintiff's upper body with his weight and hooked one arm over plaintiff's shoulder to try and turn him over, other officers continued to struggle with plaintiff to restrain his arms and ankles. (Exhibits 9, 14 & 15)

At that point, plaintiff bit Baker's forearm. Baker struck plaintiff in the head multiple times with his fist to make plaintiff release his bite, which plaintiff then did. Two of the blows struck Bentley in his arm. (Exhibits 9, 11, 14 and 15)

Plaintiff's arms and ankles were restrained. Plaintiff was rolled over on one side immediately until the wheelchair arrived. Then plaintiff was put in the wheelchair and escorted to RHU without further incident. (Exhibits 5, 6, 8, 9, 11, 14 & 15)

As the use of force began, defendant Falck dislocated his shoulder when he was driven

7

into the steel door opposite plaintiff's cell and withdrew from the use of force until his shoulder popped back into its socket. Then Falck assisted as he was able. (Exhibits 8, 14 and 15)

Defendant Simmons did not engage in the use of force directly, but started checking all the cell doors to be sure they were latched to prevent anyone from coming out to help plaintiff. (Exhibits 7 and 15)

Defendant Baker sought medical treatment for his bite injury, first at the facility and then at an area hospital. (Exhibits 9, 14 and 29)

Defendant Baker issued a disciplinary report to plaintiff for battery and disobeying orders to which plaintiff pled no contest. (Exhibits 9, 13 and 14)

The defendants indicate that the force used on plaintiff was reasonable under the circumstances and was solely due to plaintiff's actions. The defendants state that none of the force used was of the nature nor to the degree that any of them should have intervened with the officers trying to control the plaintiff. The defendants deny that plaintiff was choked at any point. Defendants also deny that any force was used on plaintiff after he was restrained and while he was waiting for the arrival of the wheelchair. The defendants also deny that plaintiff was raised three feet in the air and slammed to the concrete, but agree that plaintiff was placed on the floor more than once while he attempted to stand up and escape from the defendant officers. No injury to plaintiff's ankles was noted nor did he complain of any such injury to the medical care provider. In fact, plaintiff reported to medical staff that he was fine and that this is what happens when he doesn't get his shower. (Exhibits 5, 6, 7, 8, 9, 14, 15 and 18)

III.   **ADDITIONAL EXHIBITS**

A video tape of the entire incident was preserved from the nearby security camera and supports the statements of the various defendants and witnesses. With the Court's permission, it will be filed conventionally due to its size. Plaintiff cannot possess a copy of the video, but he will be permitted to view the video for a reasonable time upon reasonable notice at his housing facility. (Exhibit 15)

The use of force packet contains narrative statements from defendant officers Baker, Jones, Falck and Vsetecka, and also a statement from officer Danny Bentley. The use of force committee reviewed the matter and determined the use of force was appropriate, although they suggested that "Strong consideration should have been given to closing the door and doing a planned use of force." The cellhouse security video of the entire use of force is also made a part of this report and will be made available to plaintiff to review, although he cannot possess a copy while in custody for security reasons. (Exhibits 14 & 15)

Two photos were taken of plaintiff immediately after the use of force and three more were taken during the observation period following. (Exhibit 28)

Five photos were taken of Defendant Baker's injuries following the use of force. (Exhibit 29)

Plaintiff's medical and mental health record from December 28, 2021, to date is made a part of this report. (Exhibit 17)

A lesser number of pages of the medical and mental health record are included in separate exhibits to reflect plaintiff's condition on December 28, 2021 (Exhibit 18), his refusals of treatment (Exhibits 19), his complaint about his elbow (Exhibit 20), his complaint about his back pain (Exhibit 22), his complaint about ankle injury (Exhibit 23) and one mental health note

9

(Exhibit21).

Plaintiff was convicted upon his pleas of no contest to two disciplinary cases from the events of December 28, 2021.  The first case The Disciplinary Hearing Record for selected disciplinary cases of which plaintiff was convicted was for threatening or intimidating defendant Vsetecka.  The second case was for disobeying orders and for battery of defendant Baker. (Exhibits 12 & 13)

Plaintiff did not file any grievances or property claims with the Larned Correctional Mental Health Facility regarding his complaints of the use of force on December 28, 2021. (Exhibit 10)

Plaintiff did send correspondence to the central office of the Kansas Department of Corrections in Topeka complaining of the use of force and seeking investigations multiple times although none appear to be formal grievances. (Exhibits 24, 25, 26 & 27)

Internal Management Policy and Procedure 12-111A regards the use of force by staff. This document is designated as "Staff Read Only" and cannot be provided to plaintiff for his review.  It is provided to the Court as a sealed document with a protective order.  Plaintiff will not be provided a copy of this policy. (Exhibit 16)

## **CONCLUSION**

The reactive force used in restraining plaintiff prior to moving him to a prehearing detention cell, was far from excessive in light of plaintiff's violent reaction and battery of correctional staff. It appears staff acted with great restraint

The video of the event is complete and shows no excessive force being used.  In fact, the video and the medical oversight indicates that plaintiff was not injured in the course of the move.

Moreover, plaintiff does not appear to have exhausted his administrative remedies and was also convicted of disciplinary offenses upon his pleas of no contest, which convictions stand.

Plaintiff's complaints of injury began primarily months after the December 28, 2021, use of force and closer in time to when he filed his lawsuit.

No violation of plaintiff's constitutional rights are seen here.

Respectfully submitted,

/s/ Jon D. Graves
Jon D. Graves #10554

### CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following: Assistant Attorney General, Memorial Bldg., 2nd Floor, 120 S.W. 10th Ave., Topeka, KS 66612-1597 and by mailing a copy to:

Anthony Kidd #93399
El Dorado Correctional Facility
PO Box 311
El Dorado, KS 67042

/s/ Jon D. Graves
Jon D. Graves

### **EXHIBIT LIST**

1. Inmate Data Summary sheet for plaintiff Anthony Kidd
2. Letter from Counsel dated August 31, 2022, asking plaintiff for additional statement
3. Undated correspondence from plaintiff mailed September 12, 2022
4. Correspondence from counsel to plaintiff dated September 15, 2022
5. Affidavit of Tyler Jones
6. Affidavit of Jason Vsetecka
7. Affidavit of Courtnie Simmons
8. Affidavit of Michael Falck
9. Affidavit of Jeremy Baker
10. Affidavit of Penny Riedel

11. Affidavit of Danny Bentley
12. Disciplinary Report 21-2049
13. Disciplinary Report 21-2050
14. Use of Force Packet #2022-08-0024
15. Security Video of Forced Cell Move (part of Use of Force Packet, but filed separately and under seal)(Plaintiff will be allowed to view, but not possess the CD for security reasons)
16. Internal Management Policy and Procedure 12-111A (filed under seal and with protective order)(Plaintiff cannot view or possess for security reasons)
17. Plaintiff's full medical record from December 28, 2021, to date (filed under seal, but will be provided to plaintiff.
18. Plaintiff's medical record for December 28, 2021
19. Plaintiff's medical record refusing treatment or lab tests December 29, 2021, January 9, 2022, February 14, 2022 and July 21, 2022
20. Plaintiff's medical record first complaining about a bump the size of a pea on his elbow on April 6, 2022, then follow up appointments on April 13 and April 28, 2022
21. Plaintiff's Mental Health Care note May 6, 2022, about plaintiff saying he was the victim of the December 28, 2021, use of force
22. Plaintiff's medical record first complaining of back pain on April 17, 2022, with follow up appointments on April 18, 2022, April 28, 2022, May18, 2022, and June 29, 2022
23. Plaintiff's medical record first complaining about ankle pain on January 8, 2022, and follow up appointments on April 27 & 28, 2022
24. Correspondence from Facility Management in Topeka dated February 23, 2022, to plaintiff regarding plaintiff's complaint about the December 28, 2021, use of force, which complaint is also attached.
25. Undated request for investigation apparently received by Facility Management on January 19, 2022, and referred to the Larned Correctional Mental Health Facility for investigation January 21, 2022
26. Correspondence from Facility Management to plaintiff dated February 28, 2022, regarding a repetitive complaint about the December 28, 2021, use of force
27. Correspondence from Facility Management to plaintiff dated June 29, 2022, regarding plaintiff's improper use of the grievance process to complain about his housing classification.
28. Two photos of plaintiff immediately after the use of force on December 28, 2021, and three follow up photos while in cell
29. Five photos of injuries to defendant Baker's forearm, hands and face following the use of force on December 28, 2021

I, Jon D. Graves, certify that the attached are true and correct copies of records kept in the normal course of business by the Kansas Department of Corrections and the published Kansas Statutes Annotated, Kansas Administrative Regulations, Kansas Department of Corrections Internal Management Policy and Procedures, and Hutchinson Correctional Facility General Orders


/s/ Jon D. Graves_____                                             ____October 21, 2022__
Jon D. Graves                                                                              Date



       Subscribed and sworn to before me this 21st  day of October, 2022.


                                                                  __/s/ Rhonda K. Severin_____
                                                                     Notary Public

My Commission Expires:  November 18, 2022