IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ANTHONY S. KIDD,**

    **Plaintiff,**

    v.                                                    CASE NO.  22-3123-SAC

**JEREMY BAKER, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Although Plaintiff is currently incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas, the claims giving rise to his Complaint occurred during his detention at the Larned Correctional Mental Health Facility in Larned, Kansas ("LCMHF"). The Court granted Plaintiff leave to proceed *in forma pauperis*. On August 3, 2022, the Court entered a Memorandum and Order (Doc. 6) ("M&O") directing the officials responsible for the operation of the LCMHF to file a *Martinez* Report. The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 6, at 5.) The *Martinez* Report (the "Report") has now been filed. (Docs. 12, 13, 15, 19.) The Court's screening standards are set forth in detail in the M&O.

### I. Plaintiff's Allegations

Plaintiff alleges in his Complaint that on December 28, 2021, while housed at LCMHF, corrections officers choked him and used excessive force while he was handcuffed and restrained. Plaintiff describes the incident as follows. Plaintiff asked CO Vsetecka to open his door so he could clean his cell and take a shower before yard time. Vsetecka initially complied but then closed the door without explanation until yard was called. At that time, Plaintiff and Vsetecka had

1

a verbal confrontation because Plaintiff had wanted to shower and clean his cell without missing yard. Plaintiff claims Vsetecka was trying to provoke him. Vsetecka pulled out a can of mace and called the response unit. Plaintiff went to his cell and got the items he needed for a shower. Shortly, COs Baker, Jones, and Falck responded to the code. Plaintiff and Baker had a conversation, and Plaintiff believed the matter was resolved. Then, Vsetecka again closed Plaintiff's door. Baker, Jones, and Falck returned to Plaintiff's cell and gave him an order to cuff up. Plaintiff was holding his shower supplies and did not immediately comply. He was attempting to have a discussion with CO Baker when Baker reached out and grabbed his arm. Plaintiff instinctively pulled his arm back. Then, an unidentified officer (referred to as CO Doe) punched Plaintiff in the side of the head, and Plaintiff began to fight back. Additional officers appeared, including CO Simmons. They managed to get Plaintiff's ankles shackled. Plaintiff was lifted off his feet by Baker, Jones, and Falck and slammed to the ground, causing the breath to be knocked out of him, his back to be twisted, and his right elbow to forcefully hit the ground. The officers were then able to get the handcuffs on Plaintiff.

At that point, while Plaintiff's hands and feet were shackled, CO Baker put Plaintiff in a headlock and began to beat him. After hitting him for a while, Baker began choking Plaintiff. In fear for his life, Plaintiff bit Baker on the arm. Baker stopped choking him, and Plaintiff was being lifted up and put into a wheelchair when Baker grabbed Plaintiff with both hands around his throat and began choking him again. None of the other officers present, including Vsetecka, Simmons, Jones, or Falck, intervened in any way to stop the use of force.

## II. The *Martinez* Report

The Report disagrees with Plaintiff's description of events in several regards. Most notably, the Report claims that Plaintiff was never choked by Baker or anyone else and no force

was used on Plaintiff once he was fully restrained and in the wheelchair. The Report also provides that Plaintiff was charged with several disciplinary offenses in connection with the incident, and he was convicted after failing to dispute the charges.

According to the Report, the incident began when Vsetecka issued Plaintiff a disciplinary report for threatening and intimidating as a result of Plaintiff telling Vsetecka in a threatening manner to open his cell door the next time Plaintiff told him to. The supervising officer, Caption Pflughoeft, authorized moving Plaintiff to a restrictive housing unit cell pending the outcome of his disciplinary hearing. Vsetecka, Baker, Jones, and Falck went to Plaintiff's cell to put restraints on him and escort him to restrictive housing. Baker told Plaintiff three times to put his hands behind his back so he could be restrained. Plaintiff did not comply and resisted violently, beginning with punching Baker in the face. Plaintiff then tried to hit everyone as he continued to resist being handcuffed.

The Report further states that Baker punched Plaintiff multiple times in his bicep, an approved technique when an inmate is resisting being cuffed. Baker hooked an arm over Plaintiff's shoulder to try to turn him over while other officers tried to restrain Plaintiff's arms and ankles. Plaintiff then bit Baker's forearm. Baker struck Plaintiff in the head multiple times to make him release his bite. Eventually, Plaintiff was restrained and put into a wheelchair for transport.

The Report contains photographs showing the bite wound on Baker's arm. He was treated at the facility and later at the hospital.

The Report also includes video footage of the incident. The footage was taken by a camera positioned on the ceiling of the hallway. It shows Plaintiff resisting violently. It appears to confirm the involved officers' affidavits and show that no one punched or choked Plaintiff once he was restrained and awaiting or seated in the wheelchair.

Baker issued a disciplinary report to Plaintiff for battery and disobeying orders, to which Plaintiff pled no contest. Plaintiff's disciplinary convictions related to his actions on December 28, 2021, have not been overturned.

The Report states that Plaintiff reported to medical staff after the incident that he was fine and that he stated, "I deserved a shower and that's what happens when I don't get one." Doc. 12-14, at 10.

The Report also states that Plaintiff did not file any grievances with LCMHF regarding his complaints of the use of force on December 28, 2021. He did send correspondence to the central office of the KDOC complaining about the use of force and seeking investigations.

### III.  Plaintiff's Responses to the Report (Docs. 20, 21, 28, and 29)

Plaintiff filed a document titled Motion (Objecting) to the Report in Martinez v. Aaron (Doc. 20). He also responds to the Report in other motions that he has filed. Plaintiff has made the following responses to the Report:

1. He states that contrary to the Report, his ankle was injured and photographed, and he did complain of the injury. He also suffered injured ribs, which were also photographed. He states that he wrapped his ribs because of the pain and alleges that his ribs were x-rayed at El Dorado Correctional Facility. Plaintiff filed a copy of a Health Services Request Form that he submitted on January 8, 2022, requesting treatment for his ankle. (Doc. 23-1, at 2). He says that he refused to go with Defendant Baker to have his ankle examined by the nurse because he does not trust them. (Doc. 20).

2. Plaintiff states that he sent an emergency grievance regarding the incident to the Secretary of Corrections. He filed a copy of a certified mail receipt dated February 18, 2022. (Doc.

23-1, at 3). He argues that this constitutes exhaustion of administrative remedies. (Doc. 20).

3. Plaintiff asserts that there should have been footage of the incident from a handheld camera. He argues it was facility policy to use one with a planned use of force, and he further alleges that he saw someone with a camera. (Doc. 20).

4. Plaintiff objects that the Report does not include an OSR Report. He alleges that the OSR Report said that force had to be used. He argues that is incorrect and the force used was excessive. (Doc. 20).

5. Plaintiff alleges that the surveillance video he watched was "sliced and chopped." He further argues that even if it was not, what it shows was a constitutional violation. He argues that it shows Baker punching him to the floor, "bear hugging or may I say choking" him at around 10:47 into the video, with his right hand on Plaintiff's neck "choking down" so that Plaintiff could not take in air at around 10:48 into the video. (Doc. 29, at 2).

6. Plaintiff asserts that the surveillance video "clearly shows the plaintiff being punched on while cuffed and Defendant Baker choking the plaintiff on the floor and at least 800 pounds on the plaintiff['s] back stopping the plaintiff['s] airflow." (Doc. 28, at 2).

## IV. Discussion

The *Martinez* Report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The Report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Thus, at this point in the proceedings the Court does not use the Report to resolve

conflicts of fact. *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."). After reviewing the Report and Plaintiff's responses to the Report, the Court finds that Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief may be granted under § 1983.

"[A]n excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Giron v. Corr. Corp. of America*, 191 F.3d 1281, 1289 (10th Cir. 1999). "An official has a culpable state of mind if he uses force 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Redmond v. Crowther*, 882 F.3d 927, 936–37 (10th Cir. 2018) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

Plaintiff does not dispute that he was angry about missing his shower, refused to immediately cuff up when ordered to do so, jerked away from Baker, resisted forcefully being restrained, and bit Baker's arm. Plaintiff's undisputed conduct alone provided the defendants with a good faith basis for using force to control him, to restore discipline and order, and to transport him to restricted housing. *See Lockett v. Suardini*, 526 F.3d 866, 875–76 (6th Cir. 2008) (finding prison guards had a good faith basis for using force where prisoner did not dispute that he insulted an officer, became "very angered and upset", bit a guard's hand while being escorted back to his cell, and resisted the guards in response to their allegedly excessive use of force).

The Court's primary concern and reason for ordering the *Martinez* Report was Plaintiff's allegation that he was punched or choked after he was fully restrained and had stopped biting Baker. *See* M&O, p. 5. While Plaintiff continues to allege that he was choked or bearhugged while on the ground, he asserts that the bearhug occurred for only a matter of seconds. Furthermore, he alleges no more than de minimis injury, if any, from the bearhug. Also, his responses do not challenge the Report's contention that no force was used after he was fully restrained and in the wheelchair.

Given the speed at which events were occurring and given Plaintiff's violent resistance to orders to cuff up and go to restrictive housing, the Court cannot find that the Complaint contains specific facts indicating that the defendants engaged in the "wanton and unnecessary" infliction of pain that constitutes a violation of the Eighth Amendment. *See Gregg v. Georgia*, 428 U.S. 153, 173 (1976). This is especially true in light of the principle that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321–22. Plaintiff fails to state a claim for the use of excessive force in violation of the Eighth Amendment.

In addition, the Report provides that Plaintiff has not exhausted his administrative remedies with respect to the subject matter of the claims he makes in the Complaint. An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted).  "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249; *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (quoting *Jones*, 549 U.S. at 211)).  An inmate exhausts by complying with "an agency's deadlines and other critical procedural rules."  *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).  A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein. *Little*, 607 F.3d at 1249 (citing *Woodford*, 548 U.S. at 90).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from

system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). The issue of Plaintiff's failure to exhaust his available administrative remedies before filing his lawsuit must be determined before reaching the merits of his lawsuit. *Little*, 607 F.3d at 1249 ("unexhausted claims cannot be brought in court") (citation omitted); *see also Jernigan*, 304 F.3d at 1032 (an inmate who does not complete the grievance process is barred from pursuing a §1983 claim).

For Kansas state prisoners, the administrative remedies require the inmate to seek an informal resolution with personnel who work with the inmate on a daily basis. K.A.R. § 44–15–101(b). If the informal resolution is unsuccessful, the inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections. K.A.R. § 44–15–101(d). The procedure to follow at each level is described in detail in Kan. Admin. Regs. § 44–15–102; *see also Garza v. Correct Care Solutions*, 2011 WL 2580299, at *2 (D. Kan. 2011), *aff'd* 451 F. App'x 775 (10th Cir.) (granting summary judgment for failure to exhaust claims against Correct Care Solutions where plaintiff failed to allege that he sought relief on his claims first through his unit team, then the warden, and finally from the Secretary of Corrections).

As this Court has previously found, there are two distinct avenues of administrative exhaustion established in Kansas law:

> The first avenue is found in the regulations codified by Article 15 of chapter 44 of the Kansas Administrative Regulations. These regulations govern inmate grievances covering "a broad range of matters that directly affect the inmate, including" complaints about

> policies and conditions of imprisonment, actions of employees and other inmates, and incidents occurring within the facility. Kan. Admin. Regs. § 44–15–101a(d)(1)(A)–(B). As the Court previously determined, this regulation applies to a constitutional claim such as the one asserted here, where the conduct complained of stems from "actions by employees" of the prison facility. *Id*. § 44–15–101a(d)(1)(B).

*Lewis v. Carrell*, 2015 WL 413640, at *2–3 (D. Kan. 2015). "The second avenue is governed by the regulations in Article 16 of chapter 44 of the Kansas Administrative Regulations." *Id*. at *3. Kan. Admin. Regs. § 44–16–104a applies to claims for personal injury and provides: "(a) Each inmate claim for personal injury shall be submitted to the [prison] facility and [the] secretary of corrections within 10 calendar days of the claimed personal injury." *Id*. (citing K.A.R. § 44–16–104a).

The Kansas Court of Appeals has explained that the two sets of regulations found in Articles 15 and 16 are "separate and distinct" from one another. *Id*. (citing *Redford v. Kan. ex rel. Dep't of Corr.*, 295 P.3d 1054, 2013 WL 781102, at *6 (Kan. App. Mar. 1, 2013 (unpublished table decision)). Indeed, the regulation "expressly provides: 'The grievance procedure [in article 15] shall not be used in any way as a substitute for, or as part of, the . . . property loss or personal injury claims procedure [in Article 16] . . .'" *Id*. (quoting Kan. Admin. Regs. § 44–15–101a(d)(2); *see also Sharrock v. Stephens*, 2011 WL 5526444, at *1 (D. Kan. 2011) ("Importantly, the requirements in [§ 44–16–104a] apply regardless of whether the inmate pursues a grievance pursuant to § 44–15–101.").

The court in *Conley* addressed the defendants' argument that the plaintiff failed to file a personal injury claim in a § 1983 case, and noted that while case law establishes that exhaustion of Article 15's procedures alone is not sufficient for a plaintiff to assert a personal injury claim, the court "had not located any authority requiring an inmate to exhaust both the requirements of

10

Article 15 and Article 16 before asserting a § 1983 claim based on an alleged violation of an inmate's constitutional rights" and declined to invent such a requirement. *Conley v. Pryor*, 2015 WL 413638, at *14 (D. Kan. 2015). However, the court did find that exhaustion under § 44–15–101 was necessary for the plaintiff's § 1983 claim. *Id*. The court found that where the plaintiff asserted a § 1983 claim for failure to provide proper dental care, the plaintiff's claim constituted a complaint about the conditions of his imprisonment and the actions of employees, which requires exhaustion under Kan. Admin. Regs. § 44–15–101. *Id*. Likewise, the court in *Nunez*, stated that "an inmate who wishes to pursue both a personal injury claim and a § 1983 claim must comply with two distinct sets of administrative procedures even if he bases his claims on a single act." *Nunez v. Heimgartner*, 2017 WL 2264466, at *5 (D. Kan. 2017) (citation omitted). The court held that "Article 15 of the KDOC regulations covers the administrative procedures that must proceed a § 1983 claim." *Id*. at *6 (citation omitted); *see also Jones v. Parks*, No. 19-cv-3175-HLT-GEB, Doc. 50 at n.3 (D. Kan. April 13, 2021) ("Plaintiff's alleged personal injury claims based off the same incidents does not exhaust his § 1983 claim.").

Based on the Report, Plaintiff's responses, and prior caselaw, the Court concludes that Plaintiff failed to exhaust his administrative remedies before filing this action. Plaintiff alleges that he filed emergency grievances. While he sent letters or "petitions" to the Secretary of Corrections, he did not follow the established procedure. "Simply presenting a defective or non-complying grievance . . . does not constitute exhaustion of remedies." *Brewer v. Mullin*, 130 F. App'x 264, 265 (10th Cir. 2005).

**V. Pending Motions**

    **A. Motion for Identification (Doc. 16)**

Plaintiff asks the defendants to identify the John Doe defendant who, Plaintiff claims, punched him in the head. Defendants respond (Doc. 22) that discovery has not begun, and the Court has ordered that discovery may not commence until the case is fully screened and Plaintiff receives Defendants' answer to his Complaint. Defendants are correct. Plaintiff's motion is denied as premature.

### B. Motion in Limine to Exclude Evidence regarding Disciplinary History (Doc. 17)

Plaintiff asks that evidence regarding his disciplinary history for incidents unrelated to the incident forming the basis of this action be excluded as inadmissible propensity evidence. Defendants respond (Doc. 22) that motions in limine are premature. Again, this is correct. Plaintiff's motion is denied as premature.

### C. Motion in Limine to Exclude Evidence regarding Convictions (Doc. 18)

Plaintiff asks that evidence regarding his convictions be excluded as irrelevant and unfairly prejudicial. Defendants respond (Doc. 22) that motions in limine are premature. Plaintiff's motion is denied as premature.

### D. Motion for the Court to Provide Plaintiff with All Camera Videos (Doc. 21)

Plaintiff argues that summary judgment should not be granted because there are genuine issues of material fact. He states that he and the defendants disagree about what force was used, when it was used, and why it was used. He also continues to argue that there should have been handheld camera footage of the incident, and it violated policy for such camera to not be used.

Defendants respond that Plaintiff viewed on November 10, 2022, the only video footage of the incident. Defendants state that no handheld camera was used, and no additional footage exists. (Doc. 27). Defendants ask the Court to deny Plaintiff's motion as moot since he has viewed all existing video evidence of the incident.

Plaintiff filed a reply (Doc. 29) alleging that the surveillance video he watched was "sliced and chopped." He further argues that even if it was not, what it shows was a constitutional violation. He argues that it shows Baker punching him to the floor, "bear hugging or may I say choking" him at around 10:47 into the video, with his right hand on Plaintiff's neck "choking down" so that Plaintiff could not take in air at around 10:48 into the video. Doc. 29, at 2.

To the extent Plaintiff's motion was asking to view all camera footage of the incident, it is denied as moot since Plaintiff subsequently viewed the existing footage.

### E. Motion for Extension of Time to File Response (Doc. 26)

Defendants filed a motion requesting additional time to respond to Plaintiff's Motion for the Court to Provide Plaintiff with All Camera Videos (Doc. 21). Defendants subsequently filed a response, which the Court has considered. The motion is denied as moot.

### F. Motion for Default (Doc. 28)

Plaintiff continues to argue that there should have been a handheld camera used. He alleges that the defendants are engaging in a cover-up as to the camera footage, the medical request for his ankle, and the emergency grievance he sent to the Secretary of Corrections. Plaintiff also asserts that the surveillance video "clearly shows the plaintiff being punched on while cuffed and Defendant Baker choking the plaintiff on the floor and at least 800 pounds on the plaintiff['s] back stopping the plaintiff['s] airflow." Doc. 28, at 2.

Defendants respond that they have not defaulted as they have not yet been ordered to respond to the Complaint. Further, they argue that it would be unreasonable to order the defendants to produce video footage that does not exist. *See* Doc. 30.

Because Defendants have not defaulted, Plaintiff's motion is denied.

**IT IS THEREFORE ORDERED** that this matter is **dismissed** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that all pending motions (Docs. 16, 17, 18, 21, 26, and 28) are **denied**.

**IT IS SO ORDERED**.

Dated December 7, 2022, in Kansas City, Kansas.

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**